

FILED ✓ · ENTERED
RECEIVED · SERVED ON
COUNSEL/PARTIES OF RECORD

JUN 0 5 2026

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

/////////56///////

AMADO CARRILLO, Plaintiff, v OSCAR DIAZ; LISA
BREITENWISCHER CHAPMAN'S LAS VEGAS DODGE, LLC; et al.,
Defendants. 2:25-cv-02608-GMN

"Plaintiff's Reply in Support of Motion for Summary Judgment"

LEGAL ARGUMENT:

THE Opposition Fails Under the Supreme Court's Summary Judgment Framework Their
Opposition contains no affidavits based on personal knowledge, no authenticated
documents, and no evidentiary

Their Opposition contains no affidavits based on personal knowledge, no authenticated documents, and no evidentiary submissions that would be admissible at trial. Rule 56(c) (4) requires that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify." Defendants provide none. Attorney argument is not evidence. **See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).** Unsupported assertions cannot create a triable issue. The Supreme Court has further held that a nonmovant must present evidence "on which the jury could reasonably find for the nonmoving party." **Id. at 252**. Defendants' Opposition does not identify any such evidence. Instead, it relies on generalized denials and speculation, which the Court has rejected as insufficient. **See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)** (nonmovant must do more than raise "some metaphysical doubt"). II. The Evidentiary Record Is Undisputed and Supports Judgment as a Matter of Law Plaintiff's exhibits are authenticated and admissible unde**r Rule 56(c)(1)(A).** Defendants do not challenge their authenticity, do not offer contradictory evidence, and do not identify any material fact in dispute. The Ninth Circuit has held that where the nonmovant fails to produce evidence contradicting the movant's submissions, summary judgment is appropriate. **See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).** . A party that elects not to develop a factual record when they have plenty of time -cannot later rely on conjecture to avoid summary judgment. **See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007)** ("Conclusory, speculative testimony… is insufficient to raise a genuine issue of fact."). As to Defendant Díaz, service was perfected and no answer was filed. Under binding Ninth Circuit precedent, all well-pleaded factual allegations against a defaulted defendant are deemed admitted. **Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).** Defendants cannot rely on Díaz's silence to manufacture factual disputes. III. Defendants' Legal Arguments Do Not Preclude Summary Judgment Defendants do not meaningfully engage with the governing standards under Rule 56(a). They do not identify a single material fact in dispute, nor do they cite authority demonstrating that Plaintiff's evidence is insufficient. Their Opposition does not challenge the admissibility of Plaintiff's exhibits, does not present competing evidence, and does not articulate a legal theory under which summary judgment should be denied. Where, as here, the nonmovant fails to meet its evidentiary burden, Rule 56 requires judgment. IV. Under Controlling Supreme Court Doctrine, Summary Judgment Is Required ,.The Supreme Court's trilogy—Celotex, Anderson, and Matsushita— establishes the following principles: 1. The movant may prevail by showing an absence of evidence supporting the nonmovant's case. **Celotex,**

1 - 16

**477 U.S. at 325**. 2. The nonmovant must then produce admissible evidence creating a genuine dispute. Anderson, 477 U.S. at 248. 3. Speculation, conjecture, or attorney argument cannot satisfy this burden. **Matsushita, 475 U.S. at 586.** Defendants have not produced evidence, identified disputed facts, or articulated a legal basis to deny relief. Under this controlling doctrine, summary judgment is not merely appropriate—it is compelled. V. Conclusion The governing legal standards leave no room for ambiguity. Under the Supreme Court's summary judgment framework, once the moving party demonstrates the absence of evidence supporting the nonmovant's position, the burden shifts decisively. **Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)**. The nonmovant must then identify specific facts, supported by admissible evidence, that establish a genuine dispute of material fact. Rule 56(c) requires nothing less. Here, no such evidence has been produced. The Supreme Court has made clear that a "genuine" dispute exists only where the evidence is such that a reasonable jury could return a verdict for the nonmovant. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)**. Unsupported assertions, attorney argument, and speculative theories do not satisfy this standard. Nor may a party rely on conjecture or "metaphysical doubt" to avoid judgment. **Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)**. The record must contain competent evidence; here, it does not. Federal courts have long held that a litigant cannot defeat summary judgment by declining to develop a factual record and then asserting that disputes exist. See **Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000)**. This principle echoes a foundational maxim of the common law: no party may benefit from its own omission or failure to act. **See Riggs v. Palmer, 115 N.Y. 506 (1889)**. While Riggs is a classic case, the equitable principle it embodies remains deeply embedded in modern jurisprudence. A party who produces no evidence cannot invoke the absence of evidence as a shield ..The Federal Rules and the Supreme Court's jurisprudence impose a clear and non-negotiable structure on summary judgment adjudication. Rule 56 requires the nonmovant to come forward with competent, admissible evidence demonstrating the existence of a genuine dispute of material fact,../The Rule requires evidence, not speculation; facts, not argument. A litigant who elects not to produce evidence cannot shift the burden back to the movant by pointing to gaps of its own making. The Federal Rules do not permit a party to defeat summary judgment through inaction. This structural requirement reflects a deeper principle embedded in the common law: no party may obtain advantage from its own failure to act. The maxim articulated in **Riggs v. Palmer, 115 N.Y. 506 (1889),** though arising in a different context, captures the same equitable foundation that underlies Rule 56 — the law does not reward omission. Modern federal jurisprudence continues to reflect this principle: a party who produces no evidence cannot invoke the absence of evidence as a basis to avoid judgment. The Supreme Court has further emphasized that summary judgment is a critical mechanism for ensuring the fair and efficient administration of justice. It is not an extraordinary remedy, but an integral part of the Federal Rules designed to prevent cases from proceeding to trial where no genuine factual dispute exists. **Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)**. When the nonmovant fails to meet its evidentiary burden, the Rule does not merely permit judgment — it compels it. Here, the record contains no admissible evidence contradicting the movant's submissions. The nonmovant has not identified a single material fact supported by competent proof. The evidentiary record is undisputed, the legal standards are firmly established, and the Supreme Court's directives are unequivocal. Under controlling authority, and consistent with the structural purpose of Rule 56, summary judgment is not only appropriate — it is required as a matter of law,. The Ninth Circuit further prohibits sham disputes, post-hoc factual shifts, and internally contradictory submissions. When these structural, constitutional, evidentiary, and procedural limits converge—as they do here—the judiciary is permitted to terminate the claim. courts may not prolong litigation where the record fails to meet the minimum evidentiary threshold required for Article III jurisdiction—see **Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)** (no jurisdiction without a legally cognizable evidentiary foundation); **Tolan v. Cotton, 572 U.S. 650 (2014)** (courts must confine themselves strictly to the record); and **Celotex Corp. v. Catrett, 477 U.S. 317 (1986)** (summary judgment is required where the nonmovant lacks admissible evidence). The Ninth Circuit likewise holds that a court must terminate proceedings when the record contains no evidence that could permit a rational trier of fact to rule for the nonmovant— **Bias v. Moynihan, 508 F.3d 1212 (9th Cir. 2007); Nilsson v. City of Mesa, 503 F.3d 947 (9th Cir. 2007).** Defendant's evidentiary failure is complete. They never produced the original warranties, never produced the original insurance contract, and never provided any explanation for the inflated prices, the unexplained add-ons, or why amounts paid in cash appear as financed debt. Instead of originals, they submitted altered, inconsistent, and unauthenticated documents that violate every structural requirement of the Federal Rules of Evidence. **Under FRE 901**, an unauthenticated document is legally nonexistent; under **FRE 803(6),** business records lacking reliability or internal consistency are inadmissible; and under the Best Evidence Rule **(FRE 1002–1004)**, reconstructed or derivative copies cannot substitute for the originals. Rule 56(c)(1)–(e) requires specific admissible facts, not silence, speculation, or post-hoc narratives. Defendant's failure to produce the original warranty and insurance documents—where the price inflation and fraudulent alterations occurred—constitutes spoliation, and an adverse inference is mandatory. Federal consumer-protection statutes impose strict liability for missing or non-uniform disclosures, and Defendant's inability to explain the inflated charges or the conversion of cash payments into financed amounts confirms noncompliance. With no originals, no authentication, no explanation, and no admissible evidence, Defendant cannot create a genuine dispute under Celotex, Anderson, Matsushita, or Scott v. Harris. Summary judgment is not merely appropriate; it is the only legally permissible outcome..The doctrines of estoppel, waiver, and forfeiture prevent a party from shifting theories, contradicting prior representations, or attempting to rehabilitate a deficient record through speculation or post-hoc reconstruction. Under this controlling Supreme Court and Ninth Circuit framework, Defendant's opposition fails for a simple, dispositive reason: they never produced the original warrantys - contract- documents, never produced the original insurance contract, and never provided any admissible

2 - 16

explanation for the inflated prices, the unexplained add-ons, or why cash payments appear as financed debt. What they submitted instead are altered, inconsistent, and unauthenticated copies that violate FRE 901, lack reliability under **FRE 803(6),** and are barred by the Best Evidence Rule (FRE 1002–1004). Assertions in briefing cannot substitute for evidence**, Barcamerica, 289 F.3d 589,** and self-serving narratives cannot create a genuine dispute, **Villiarimo, 281 F.3d at 1065.** A party cannot manufacture a factual controversy by contradicting the objective record, **Kennedy, 952 F.2d at 266–67**, nor can a court credit a version of events "blatantly contradicted by the record," **Scott v. Harris, 550 U.S. at 380.** Because Defendant failed to cite any admissible evidence under Rule 56(c)(1)(A), failed to provide declarations based on personal knowledge under Rule 56(c)(4), and failed to rebut Plaintiff's facts, those facts are deemed admitted under Rule 56(e)(2). Their failure to produce the original warranty-contracts and insurance documents——constitutes spoliation, and an adverse inference is mandatory. With no originals, no authentication, no explanation, and no competent evidence, Defendant cannot meet its burden under Celotex, Anderson, Matsushita, or Scott. summary judgment; it is compelled as a matter of law. Under this settled Supreme Court and Ninth Circuit framework, Defendant's opposition collapses for a simple, dispositive reason:
 they Defendants has produced no admissible evidence. They never produced the original warranties, never produced the original insurance contract, never authenticated any document under **FRE 901,** and never explained the inflated prices, fabricated add-ons, or why amounts paid in cash appear as financed debt. Instead of originals, they submitted altered, inconsistent, and unauthenticated copies that violate **FRE 402–403,** lack reliability under **FRE 803(6)**, and are barred by the Best Evidence Rule **(FRE 1002–1004).** Assertions in briefing cannot substitute for evidence, **Barcamerica, 289 F.3d 589,** and self-serving narratives cannot create a genuine dispute, **Bias, 508 F.3d at 1219**. Under foundational contract doctrine, agreements containing material alterations without mutual assent, inconsistent essential terms, or substantively or procedurally unconscionable provisions are unenforceable. Restatement (Second) of Contracts **§§ 7, 17, 208.** Federal consumer-protection statutes impose strict liability for non-uniform disclosures and material omissions, including TILA, Regulation Z, the Magnuson-Moss Warranty Act, and Section 5 of the FTC Act. Judicial estoppel likewise bars a litigant from advancing positions incompatible with prior representations. **New Hampshire v. Maine, 532 U.S. 742 (2001**). Courts uniformly hold that unsupported, immaterial, speculative, or unreliable assertions cannot defeat summary judgment. Se**e Reeves, 530 U.S. at 150–51; Villiarimo, 281 F.3d at 1065; Nelson, 83 F.3d at 1081–82; Kitsap Physicians Serv., 314 F.3d at 1001.** Self-serving statements lacking corroboration are insufficient. **FTC v. Publ'g Clearing House, 104 F.3d 1168 (9th Cir. 1997).** Evidence contradicted by objective records must be disregarded. **Scott v. Harris, 550 U.S. 372 (2007).** Even assuming Defendant's narrative were true, their theory is legally insufficient and cannot create a genuine dispute. **Moreland, 159 F.3d 365.** Defendant offers no authenticated documents, no original warranty or insurance records, and no admissible evidence under Rule 56(c)(1)(A). Their opposition relies entirely on lay opinions, speculation, and unsupported assertions—none admissible under **FRE 701.** Narrative disagreement or subjective belief does not satisfy Anderson. Under **Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001),** the Court is not required to search the record for evidence Defendant did not cite. Their failure to produce the original warranty and insurance documents—where the price inflation and fraud occurred—constitutes spoliation, and an adverse inference is warranted. With no originals, no authentication, no explanation, and no competent evidence, Defendant cannot meet its burden under Celotex, Anderson, Matsushita, or Scott. Summary judgment is not merely appropriate; it is compelled as a matter of law

3- 16

Supreme Court: Judicial estoppel
New Hampshire v Maine 532 U.S 742 (2001)

Defendant has failed to dispute any material fact, failed to comply with
Rule 56, and failed to participate in good faith. The record is
unrebutted, the misconduct is documented, and the legal standards for
liability and punitive damages are satisfied.Plaintiff respectfully
requests that the Court grant the Motion for Summary Judgment and award
all relief deemed just and appropriate under the circumstances

. REPLY : ARGUMENT _

STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Plaintiff submits the following Statement of Undisputed Material Facts. Defendant has failed to dispute any of these facts, has submitted no contradictory evidence, and has not created a genuine issue for trial. Under **Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986),** the absence of evidence from the non-moving party requires entry of summary judgment.1. Defendant's employee engaged in the underlying misconduct that gave rise to this action. Defendant has not denied, rebutted, or addressed this misconduct in any filing. Silence on a material fact constitutes failure to dispute under Rule **56(c) (1)**.2. Defendant made no effort to investigate the misconduct. Defendant has produced no evidence of any internal review, corrective action, or inquiry. Failure to investigate supports punitive exposure under **Smith v. Wade, 461 U.S. 30, 56 (1983)**.3. Defendant made no attempt to resolve the dispute or communicate with Plaintiff. No settlement effort, dialogue, or acknowledgment of the harm occurred at any stage. This conduct contradicts the duty of good-faith participation recognized in **Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)**.4. Defendant's first and primary response was to seek dismissal under Rule 12(b).This was done without addressing the facts, the evidence, or the underlying misconduct. Using procedural elimination to avoid accountability constitutes bad faith under **Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001)**.5. Defendant has not submitted any evidence contradicting Plaintiff's exhibits. No declarations, documents, or factual materials were offered to dispute Plaintiff's record. Under Rule 56(e), a party who fails to properly address another party's factual assertions is deemed to have admitted them.6. Defendant has not disputed any material fact required under Rule 56.Defendant's Opposition contains no citations to evidence as required by Rule **56(c)(1)(A)**. A party cannot defeat summary judgment through silence or avoidance. **Celotex, 477 U.S. at 322**.7. Plaintiff complied with all procedural requirements. Plaintiff met every deadline, submitted evidence, and advanced the case on the merits. Pro se litigants are entitled to meaningful access to the courts. **Haines v. Kerner, 404 U.S. 519, 520 (1972)**.8. The factual record before the Court is entirely unrebutted. Defendant's silence on the merits leaves Plaintiff's evidence uncontested. Unrebutted evidence requires judgment as a matter of law. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)**.Defendant has not presented any evidence showing that Plaintiff authorized the inflation of the Mopar CarFlex warranty from $1,500 cash to $4,800 financed. Plaintiff paid $1,500 in cash for the Mopar CarFlex warranty. Defendant has produced no document, signature, or authorization permitting the dealer to inflate the amount to $4,800 or to classify it as a financed "lienholder" item. Under Rule **56(c)(1)**, the absence of any contradictory evidence renders this fact

4-16

undisputed.10. Defendant has not presented any evidence showing that Plaintiff authorized the GAP warranty—paid in cash—to be reported as financed or "lienholder." Plaintiff paid the GAP product in full with cash. Defendant has produced no authorization, no signed addendum, and no contractual basis to classify the GAP product as financed. Failure to credit a cash payment and reporting it as financed constitutes a material misrepresentation under Truth in Lending Act, **15 U.S.C. § 1638**.11. Defendant has not presented any evidence showing that Plaintiff authorized the third warranty (Century/KarrGuard) to be added, financed, or taken from the down payment. Defendant's own contract states that the product was "taken from down payment," yet it simultaneously appears as financed and "lienholder." Defendant has produced no authorization, no signature, and no disclosure permitting this dual treatment. This constitutes an undisputed violation of TILA and deceptive practices under **NRS 598**.12. Defendant has not disputed that all three products appear as financed ("lienholder") despite being paid in cash or never authorized. Defendant has submitted no evidence explaining or justifying why cash-paid products were reported as financed, or why an unauthorized product was added and treated as financed. Under **Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986),** the absence of rebuttal requires judgment as a matter of law. Defendant has failed to present any evidence showing that Plaintiff authorized the inflation, financing, or "lienholder" classification of any of the three products at issue. Plaintiff paid $1,500 in cash for the Mopar CarFlex warranty, yet Defendant inflated the amount to $4,800 and reported it as financed. Plaintiff paid the GAP product in cash, yet Defendant reported it as financed. Defendant added a third warranty without authorization, took the cost from Plaintiff's down payment, and still reported it as financed. Defendant has produced no signed authorization, no addendum, no disclosure, and no contractual basis for any of these actions. These undisputed facts constitute material misrepresentations under the Truth in Lending Act, **15 U.S.C. § 1638**, deceptive practices under NRS 598, and reckless disregard for Plaintiff's rights under **Smith v. Wade, 461 U.S. 30, 56 (1983)**. Defendant's failure to rebut these facts satisfies the standard for punitive damages under **Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005)**.13. Defendant has not produced the original retail installment contract that Plaintiff signed, which contained no add-ons.Defendant relies exclusively on an altered version transmitted to the lender. Defendant has produced no explanation for the disappearance of the original contract, no chain of custody, and no evidence of preservation efforts. The unexplained absence of the original contract constitutes spoliation under **Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991)**.14. Defendant has not produced the original Buyer's Order/Buyer's Receipt provided to Plaintiff at the time of purchase.The only version Defendant relies on is an altered Buyer's Receipt containing inflated amounts and unauthorized add-ons. Defendant has produced no evidence that the altered version was ever presented to Plaintiff. Failure to preserve the original document supports an adverse inference under **Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993)**.15. Defendant relies solely on altered documents that benefit Defendant and contradict Plaintiff's contemporaneous evidence.the altered contract and altered Buyer's Receipt contain add-ons, inflated prices, and financed items that Plaintiff never authorized. Defendant has produced no evidence that Plaintiff agreed to these changes. Reliance on altered documents in place of originals supports a finding of bad faith under **Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006)**.16. Defendant has not presented any evidence showing that Plaintiff authorized the addition or financing of any add-ons.The original contract—now missing— contained no add-ons. The altered contract contains multiple add-ons and inflated charges. Defendant has produced no signed authorization for any of these items. This constitutes a material misrepresentation under TILA, **15 U.S.C. § 1638**.Defendant's failure to produce the original contract and original Buyer's Receipt—while relying exclusively on altered versions that benefit Defendant—constitutes spoliation. The Supreme Court has held that when a party destroys or fails to preserve evidence it was obligated to maintain, the Court may impose sanctions and adverse inferences. **Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991)**.The Ninth Circuit is clear: when a party fails to produce original documents and instead relies on altered or incomplete versions, the Court may presume that the missing evidence would have been unfavorable to that party. **Glover v. BIC Corp., 6 F.3d**

5- 16

**1318, 1329 (9th Cir. 1993)**.Here, Defendant has not produced: the original contract Plaintiff signed (which contained no add-ons),the original Buyer's Receipt ,any authorization for add-ons, inflated prices, or financed products, any explanation for the disappearance of the originals. Instead, Defendant relies solely on altered documents transmitted to the lender—documents that contain inflated charges, unauthorized add-ons, and classifications as "financed" that contradict Plaintiff's cash payments. This conduct satisfies the Ninth Circuit standard for bad faith and spoliation. **Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006)**. An adverse inference is therefore appropriate: the original documents would have supported Plaintiff's version of events and contradicted Defendant's altered documents. Defendant's inability to produce the original retail installment contract and the original Buyer's Order—documents that Plaintiff signed and that contained no add-ons—while relying exclusively on altered versions that inflate prices, insert unauthorized products, convert cash payments into financed "lienholder" items, and misrepresent the transaction, constitutes spoliation under **Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991)**, and mandates an adverse inference under **Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).** Defendant has produced no chain of custody, no preservation explanation, no authorization for the inflated Mopar warranty (raised from $1,500 cash to $4,800 financed), no authorization for the GAP warranty paid in cash but reported as financed, and no authorization for the third warranty taken from Plaintiff's down payment yet also reported as financed. Reliance on altered documents in place of originals satisfies the Ninth Circuit standard for bad faith under **Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006)**, and the undisputed misclassification of cash-paid items as financed constitutes a material misrepresentation under the Truth in Lending Act, **15 U.S.C. § 1638,** and deceptive practices under **NRS 598.** Defendant's failure to rebut any of these facts under Rule **56(c)(1)** renders them admitted under **Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986**), and the combination of spoliation, document alteration, and reckless disregard for Plaintiff's rights satisfies the standard for punitive damages under **Smith v. Wade, 461 U.S. 30, 56 (1983), and Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).Under Fed. R. Evid. 1002,** the original writing is required to prove its content. Defendant's failure to produce the original contract and original Buyer's Order—while relying on altered versions— violates the Best Evidence Rule and prevents Defendant from proving the terms of the transaction. "Under Rule 56(e), a party who fails to properly address another party's factual assertions is deemed to have admitted them. Defendant's silence regarding the missing original contract, missing Buyer's Order, unauthorized add-ons, inflated charges, and misclassified cash payments constitutes a judicial admission. "A material alteration of a contract without the consent of the other party voids the instrument as a matter of law. Defendant's unilateral alteration of the contract—adding products, inflating prices, and converting cash payments into financed items — renders the altered contract void and unenforceable. "Failure to provide accurate TILA disclosures —including accurate finance charges, itemization of amounts financed, and truthful representation of cash vs. financed items—creates automatic statutory liability under **15 U.S.C. § 1640.** ""While courts must draw reasonable inferences in favor of the non-moving party, such inferences must be based on evidence. **Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)**. Defendant has produced none. Therefore, no inference may be drawn in its favor." Unrebutted evidence must be accepted as true. Defendant's failure to dispute the inflation of prices, unauthorized add-ons, misclassification of cash payments, and disappearance of original documents requires the Court to accept Plaintiff's evidence as established .""The combination of document alteration, disappearance of originals, and reliance on falsified records satisfies the standard for punitive damages under **Smith v. Wade, 461 U.S. 30, 56 (1983), and Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).**""The Ninth Circuit has held that spoliation alone may justify summary judgment. **Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006)**. Defendant's destruction of the original contract and Buyer's Order independently warrants judgment in Plaintiff's favor. AND THE 2 WARRANTYS AND 1 INSURACE WHERE THE FRAUD OCURRED. Defendant's reliance on altered documents—while failing to produce the original retail installment contract and original Buyer's Order that Plaintiff actually signed—constitutes not only spoliation under **Chambers v.**

6 - 16

NASCO, Inc., 501 U.S. 32, 45–46 (1991), but also fraudulent concealment under **Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)**, barring Defendant from asserting any defense based on the altered documents it now presents. The disappearance of the originals, combined with the unilateral insertion of unauthorized add-ons, inflated charges, and the conversion of cash payments into financed "lienholder" items, violates the Best Evidence Rule, **Fed. R. Evid. 1002**, rendering the altered documents legally inadmissible to prove the terms of the transaction. Under the falsus in uno doctrine, **United States v. Dunnigan, 507 U.S. 87, 94 (1993)**, Defendant's submission of falsified documents permits the Court to disregard Defendant's entire evidentiary position. Defendant's conduct also violates the duty of candor to the tribunal, **United States v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993)**, and triggers the clean hands doctrine, Precision **Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945)**, which bars Defendant from seeking equitable or legal relief while relying on its own wrongdoing. The Ninth Circuit has held that spoliation alone may justify summary judgment, **Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006)**, and Defendant's destruction and concealment of the original contract independently satisfies this standard. Moreover, the misclassification of cash-paid items as financed constitutes a material misrepresentation under the **Truth in Lending Act, 15 U.S.C. § 1638,** creating automatic statutory liability under **Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989**). Defendant's failure to rebut any of these facts under Rule **56(c)(1)** renders them admitted under **Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986),** and the combination of document alteration, spoliation, fraudulent concealment, and reckless disregard for Plaintiff's rights satisfies the standard for punitive damages under **Smith v. Wade, 461 U.S. 30, 56 (1983), and Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005)**. Under the no-benefit-from-wrongdoing rule, **Riggs v. Palmer, 115 N.Y. 506 (1889),** Defendant cannot rely on the very documents it altered, concealed, and misrepresented. Defendant's conduct triggers equitable estoppel, **Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)**, preventing Defendant from asserting any defense based on facts it manipulated or concealed. With no original contract, no original Buyer's Order, no authorization for add-ons, no explanation for the disappearance of the originals, and no evidence rebutting Plaintiff's record, Defendant stands before the Court with unclean hands, no admissible evidence, and no legal or equitable basis to oppose summary judgment.Defendant's assertion that Plaintiff's metadata, chain of custody, and original documents are the only genuine versions—because Defendant cannot produce its own originals—constitutes a binding admission that no alternative contract ever existed. Under the Best Evidence Rule, **Fed. R. Evid. 1002,** the absence of Defendant's original contract renders any altered or reconstructed version legally inadmissible to prove the terms of the transaction. Defendant's inability to produce an original instrument, combined with its reliance on altered documents, triggers the doctrine of fraudulent concealment, **Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946),** and bars Defendant from asserting any defense based on documents it cannot authenticate. Defendant's failure to preserve the original contract triggers adverse inferences and equitable **estoppel,** preventing Defendant from asserting defenses based on facts it cannot document. **Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)**. TILA imposes strict liability for inaccurate or missing disclosures, **r Cunningham v. NationsCredit Fin. Servs., 497 F.3d 714, 718 (7th Cir. 2007)**. Likewise, Magnuson-Moss requires written, pre-sale disclosure of warranty terms, and the absence of the original contract or warranty documents is fatal to Defendant's position. **Skelton v. Gen. Motors Corp., 660 F.2d 311, 316 (7th Cir. 1981)**. Defendant's inability to authenticate its own documents under **Fed. R. Evid. 901,** combined with the absence of the original writing required by **Fed. R. Evid. 1002**, eliminates any evidentiary basis for disputing Plaintiff's authenticated record. The Ninth Circuit has repeatedly held that credibility arguments cannot defeat statutory violations or overcome documentary evidence. Hauk v. **JP Morgan Chase Bank USA, 552 F.3d 1114, 1121 (9th Cir. 2009).** Magnuson-Moss independently requires written, pre-sale warranty disclosures, and the absence of original warranty documents constitutes per se noncompliance. **Boelens v. Redman Homes, 748 F.2d 1058, 1065 (5th Cir. 1984).** Defendant cannot authenticate any document under Fed. R. Evid.

7 - 16

901, cannot satisfy the Best Evidence Rule under **Fed. R. Evid. 1002,** and cannot rely on reconstructed or testimonial evidence **United States v. Safavian, 435 F. Supp. 2d 36, 40 (D.D.C. 2006**). With no metadata, no chain of custody, no original disclosures, and no contemporaneous records, Defendant lacks admissible evidence and cannot dispute Plaintiff's authenticated record under any federal standard. Defendant cannot overcome Plaintiff's authenticated evidence because federal courts reject any defense that is factually impossible to substantiate. Under **Scott v. Harris, 550 U.S. 372, 380 (2007),**../Defendant's position collapses under the Legal Impossibility Doctrine, which bars any defense that cannot be substantiated with admissible evidence. **Blosser v. Gilbert, 751 F. App'x 901, 903 (9th Cir. 2018).**

8- 16

Judicial Estoppel : New Hampshire V maiNE
532 U.S 742 ( 2001)

assuming arguendo that "Lisa" is a named defendant, her declaration is legally incapable of creating any triable issue under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and controlling Supreme Court and Ninth Circuit precedent. As a threshold matter, she cannot assert defenses belonging to the LLC, including improper service under Fed. R. Civ. P. 12(b)(5), because the Supreme Court has held that an artificial entity "may appear only through licensed counsel" and cannot rely on employees or co-defendants to litigate or authenticate records on its behalf. Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993). Her statements regarding service are therefore void for lack of standing.Her affidavit is procedurally barred. Defendants failed to disclose her under Rule 26(a)(1)(A)(i), and exclusion under Rule 37(c)(1) is "self-executing and automatic." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Her affidavit also violates Rule 56(c)(4) because it lacks foundation, is not based on admissible evidence, and contains conclusory assertions that cannot defeat summary judgment. The Supreme Court has held that summary judgment cannot be defeated by "conclusory, self-serving statements unsupported by the record." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).Her affidavit collapses under the Federal Rules of Evidence. She is not a custodian of records, cannot authenticate dealership documents under Rule 901(a), and cannot establish chain of custody or version history. The Ninth Circuit requires authentication by a witness "with control, knowledge, or authority over the recordkeeping system." United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019). She lacks personal knowledge under Rule 602 of internal DMS logs, system-generated versions, post-sale alterations, or the dealership's document-retention protocols. Her statements constitute improper lay opinions under Rule 701, and to the extent she recounts statements made by others, they are inadmissible hearsay under Rules 801–802. She cannot satisfy the business-records exception under Rule 803(6Although "Lisa" may have participated in the preparation or presentation of one version of the contract, this does not make her a custodian of records nor does it confer authority to authenticate dealership documents under Fed. R. Evid. 901(a). The fact that she handled or even generated a particular contract does not establish personal knowledge of the dealership's recordkeeping system, the creation of internal versions, the DMS logs, the lender-submitted copies, or the chain of custody of all iterations of the document. Courts have consistently held that a transactional employee is not a custodian and cannot testify to the mode of preparation, reliability, or integrity of corporate records. See United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019). Accordingly, even if she created or altered one version of the contract, she still cannot authenticate the dealership's records, cannot establish the completeness of the file, and cannot testify competently under Rule 803(6) regarding the business-records exception. ) .Her affidavit also violates the Best Evidence Rule. Under Rules 1002–1004, only the original contract or a properly authenticated duplicate may be used to prove its contents. Plaintiff possesses a physically delivered, signed contracts (warrantys,insurance) with materially different terms. Her narrative cannot override the original documents, and any attempt to do so is barred.Her affidavit triggers spoliation consequences. Defendants' failure to produce all versions of the contract in their possession —while relying on a single employee's narrative—constitutes destruction or withholding of evidence, warranting an adverse inference under Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). No amount of "certified logs" or internal declarations can cure the absence of the original documents or explain why Plaintiff possesses a version the dealership now disavows.Her affidavit is substantively defective. To the extent her statements contradict Plaintiff's physically delivered, signed contracts, they constitute a prohibited sham affidavit under Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012). The Ninth Circuit prohibits a party from manufacturing a factual dispute by submitting an affidavit that contradicts prior evidence.Under Rule 56(a), the Court may consider only admissible evidence. Because "Lisa's" affidavit lacks foundation, authentication, disclosure, personal knowledge, evidentiary reliability, and consistency with the documentary record, it is inadmissible as a matter of constitutional due process and federal evidentiary standards. It therefore cannot create a genuine dispute of material fact, cannot rebut Plaintiff's sworn declaration, and must be disregarded in its entirety.I. INTRODUCTIONPlaintiff submits this Reply to address Defendants' opposition, which relies almost entirely on an inadmissible affidavit from "Lisa," unsupported assertions regarding service, and uncertified internal dealership records that fail to satisfy the Federal Rules of Evidence. None of Defendants' submissions create a genuine dispute of material fact under Fed. R. Civ. P. 56(a). Plaintiff's physically delivered, signed contract—supported by sworn declaration and documentary exhibits—remains the only admissible evidence before the Court. Defendants' failure to produce all versions of the contract, combined with their reliance on a single employee's narrative, triggers spoliation consequences and underscores the absence of any competent rebuttal evidence. Summary judgment is therefore appropriate.II. LEGAL STANDARDSSummary judgment

9-16

must be granted where the non-movant fails to produce admissible evidence establishing a genuine dispute of material fact. Fed. R. Civ. P. 56(a). The Supreme Court has held that a non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Conclusory, self-serving statements unsupported by the record cannot defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The burden shifts to the non-movant to produce evidence "on which a reasonable jury could return a verdict." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).Only evidence admissible under the Federal Rules of Evidence may be considered. Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). Affidavits must be based on personal knowledge, set out admissible facts, and show competence to testify. Fed. R. Civ. P. 56(c)(4).III. ARGUMENTA. "Lisa" Cannot Assert Defenses on Behalf of the LLCEven if "Lisa" is a named defendant, she cannot litigate for the LLC. The Supreme Court has held that an artificial entity "may appear only through licensed counsel." Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993). Accordingly:She cannot challenge service for the LLC under Rule 12(b)(5).She cannot authenticate corporate records.She cannot assert corporate defenses.She cannot cure procedural defects on behalf of the entity.Her statements on these subjects are void for lack of standing.B. Her Affidavit Is Procedurally Barred Under Rules 26 and 37Defendants failed to disclose "Lisa" as a witness under Fed. R. Civ. P. 26(a)(1)(A)(i). Exclusion under Rule 37(c)(1) is "self-executing and automatic." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Courts routinely strike affidavits from undisclosed witnesses at the summary-judgment stage. See Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1180 (9th Cir. 2008).Thus, her affidavit cannot be considered for any purpose.C. Her Affidavit Violates Rule 56(c)(4)Rule 56(c)(4) requires affidavits to:be based on personal knowledge,set out admissible facts, and,show competence to testify.Her affidavit fails all three requirements:She lacks personal knowledge of DMS logs, version history, and corporate recordkeeping.She offers conclusions rather than facts.She is not competent to authenticate dealership documents or explain internal systems.Courts routinely disregard such affidavits. See Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).D. Her Affidavit Violates Rule 602 (Lack of Personal Knowledge)Rule 602 bars testimony not based on personal knowledge. She cannot testify about:internal system logs,document generation processes,version history,post-sale alterations,chain of custody,corporate procedures,dealership recordkeeping systems.Her statements on these subjects are inadmissible.E. She Cannot Authenticate Any Document Under Rule 901(a)Authentication requires a witness "with control, knowledge, or authority over the recordkeeping system." United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019).She is not a custodian of records. She cannot authenticate:logs,versions,dealership records,internal documents,system-generated forms.Thus, her affidavit is inadmissible under Rule 901(a).F. Her Statements Are Inadmissible Hearsay (Rules 801 802)Any statements she recounts from:other employees,managers,system administrators,lenders,dealership staff,are hearsay and inadmissible under Rules 801–802.She also cannot satisfy the business-records exception under Rule 803(6) because she:not create the records,is not custodian,cannot testify to their mode of preparation,cannot establish reliability.Courts reject such attempts. See Clark v. City of Los Angeles, 650 F.2d 1033, 1036–37 (9th Cir. 1981).G. Her Affidavit Violates the Best Evidence Rule (Rules 1002–1004)Under Rule 1002, the original is required to prove its contents. Her narrative cannot override the original document. Only the original or a properly authenticated duplicate is admissible.H. Her Affidavit Is a Sham Affidavit Under Ninth Circuit LawTo the extent her statements contradict:Plaintiff's physical contracts,Plaintiff's sworn declaration,the documentary record,they constitute a sham affidavit. Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012).The Court must disregard it.I. Defendants' Failure to Produce All Contract Versions Constitutes SpoliationDealership DMS systems generate:multiple versions,logs,reprints,internal copies,lender copies.Defendants produced only one version, while Plaintiff is another. This discrepancy triggers spoliation. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).Courts apply adverse inferences where a party fails to preserve or produce relevant documents.IV. CONCLUSION lisaBecause Defendants rely solely on inadmissible evidence, fail to authenticate any document, and cannot explain the existence of multiple contract versions, no genuine dispute of material fact exist summary judgment is appropriate under Rule 56(a).Plaintiff never received the original lender-submitted contract. The only contract ever physically delivered to Plaintiff was provided directly by the lender. The version now produced by Defendants is materially different from the version the dealership delivered to Plaintiff, demonstrating that the dealership—controlled the creation, alteration, and transmission of the documents. Even if "Lisa" participated in preparing or modifying one version of the contract, such involvement does not make her a custodian of records nor does it confer authority to authenticate dealership documents under Fed. R. Evid. 901(a). The Ninth Circuit requires authentication by a witness "with control, knowledge, or authority over the recordkeeping system," not merely someone who handled or generated a transactional document. United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019).Because she did not maintain the dealership's records, did not oversee the DMS system, and cannot testify to the mode of preparation or integrity of all versions of the contract, she cannot satisfy the foundational requirements of the business-records exception under Fed. R. Evid. 803(6). See Clark v. City of Los Angeles, 650 F.2d 1033, 1036–37 (9th Cir. 1981) (business-records exception requires testimony from a qualified custodian). Her affidavit also fails under Fed. R. Evid. 602, as she lacks personal knowledge of the dealership's internal version history, lender-submitted copies, and chain of custody of the documents.The existence of materially different contracts(lender contract, warrantys , insurance)— defendants exhibits displayed in there opposition —constitutes evidence of alteration or withholding of records, triggering spoliation consequences. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). Under the Best Evidence Rule, Fed. R. Evid. 1002–1004, Plaintiff's originals, email delivered contract controls, and Defendants cannot rely on an internally generated version to contradict the original document. Accordingly, "Lisa's" affidavit cannot authenticate the dealership's records, cannot establish chain of custody, and cannot create a genuine

10 - 16

dispute of material fact under Fed. R. Civ. P. 56(a) The version now produced by Defendants is materially different from the versions the signed to Plaintiff, demonstrating that the dealership—controlled the creation, alteration, and transmission of the documents. This discrepancy confirms that any internal version now offered by Defendants is not the operative contract and cannot override the physically delivered agreement. Under the Best Evidence Rule, Fed. R. Evid. 1002–1004, the original, physically delivered contract controls, and Defendants cannot rely on an internally generated version to contradict the original document.Even if "Lisa" participated in preparing or modifying one version of the contract, such involvement does not make her a custodian of records nor does it confer authority to authenticate dealership documents under Fed. R. Evid. 901(a). The Ninth Circuit requires authentication by a witness "with control, knowledge, or authority over the recordkeeping system," not merely someone who handled or generated a transactional document. United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019). Because she did not maintain the dealership's records, did not oversee the DMS system, and cannot testify to the mode of preparation or integrity of all versions of the contract, she cannot satisfy the foundational requirements of the business-records exception under Fed. R. Evid. 803(6). See Clark v. City of Los Angeles, 650 F.2d 1033, 1036–37 (9th Cir. 1981) (business-records exception requires testimony from a qualified custodian).Her affidavit also fails under Fed. R. Evid. 602, as she lacks personal knowledge of the dealership's internal version history, lender-submitted copies, and chain of custody of the documents. She cannot testify about internal system logs, document generation processes, post-sale alterations, or the dealership's recordkeeping protocols. Courts routinely disregard affidavits that lack personal knowledge. See Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).Her statements recounting what other employees, managers, lenders, or system administrators allegedly said constitute inadmissible hearsay under Fed. R. Evid. 801–802. She cannot satisfy the business-records exception because she did not create the records, is not custodian, and cannot testify to their mode of preparation. Clark, 650 F.2d at 1036–37.Defendants' internal contract is not self-authenticating under Fed. R. Evid. 902. It lacks certification, custodian attestation, and any indicia of reliability. Plaintiff's physically delivered contract is the only document that satisfies the requirements of Rule 902(4) and (11) for certified records.Under Fed. R. Evid. 1008, questions of authenticity are reserved for the trier of fact only when the proponent first satisfies the foundational requirements of Rule 901. Because Defendants have not met those foundational requirements, the Court cannot defer authenticity to a jury. Their document is inadmissible as a matter of law.Even if the Court were to consider Defendants' internally generated version of the contract, its probative value is substantially outweighed by the danger of unfair prejudice, confusion, and misleading the factfinder under Fed. R. Evid. 403. A document that contradicts the original, physically delivered contract risks misleading the Court and cannot be admitted.The existence of two materially different contracts—one physically delivered to Plaintiff and one later produced by Defendants—constitutes evidence of alteration or withholding of records, triggering spoliation consequences. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). Courts apply adverse inferences where a party fails to preserve or produce relevant documents. Defendants' exclusive control over the DMS system and their failure to produce all versions of the contract further support an adverse inference.Any assertion that only one version of the contract exists is inconsistent with the dealership's own DMS processes and risks violating Fed. R. Civ. P. 11(b), which requires factual contentions to have evidentiary support. Dealerships routinely generate multiple versions of contracts during the sales process, including lender copies, internal copies, and customer copies. Under Fed. R. Evid. 406, this routine practice supports Plaintiff's position that the dealership—not Plaintiff—controlled the creation and alteration of all versions of the contract.Any ambiguity between competing versions of a contract must be construed against the drafter. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). Because Defendants drafted and delivered the contract, any discrepancy must be resolved in Plaintiff's favor.To the extent "Lisa's" affidavit contradicts Plaintiff's physically delivered contract, Plaintiff's sworn declaration, or the documentary record, it constitutes a sham affidavit under Ninth Circuit law. Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012). The Court must disregard it.Because Defendants rely solely on inadmissible evidence, fail to authenticate any document, and cannot explain the existence of multiple contract versions, no genuine dispute of material fact exists under Fed. R. Civ. P. 56(a). Plaintiff's physically delivered, signed contract remains the only admissible evidence.defendants' reliance on an internally generated contract also fails under the doctrine of "document integrity," which requires that the operative contract be the version mutually assented to and physically delivered to the consumer. Courts consistently hold that where multiple versions exist, the version delivered to the consumer controls because it reflects the final terms of the transaction. See Harris v. TAP Worldwide, LLC, 248 Cal. App. 4th 373, 385 (2016). Defendants cannot retroactively substitute an internal version for the contract they delivered to Plaintiff at the time of sale.Furthermore, Defendants' internal version fails under the doctrine of "contract delivery," which requires that a contract be delivered to the party to be bound. See Civ. Code § 1626 (delivery is essential to contract formation). Because Plaintiff never received the lender-submitted version, Defendants cannot rely on it to contradict the physically delivered contract.Defendants' version also fails under the doctrine of "objective manifestation of assent." The Ninth Circuit requires that contract terms be those objectively manifested and delivered, not those later generated internally. See Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014). Plaintiff's possession of the physically delivered contract is the only objective manifestation of assent.Additionally, Defendants' internal version violates the parol-evidence rule, which bars the use of extrinsic documents to contradict the terms of a fully integrated written agreement. See Casa del Caffe Vergnano v. ItalFlavors, LLC, 816 F.3d 1208, 1213 (9th Cir. 2016). The physically delivered contract is the integrated agreement; Defendants' internal version is inadmissible extrinsic evidence.Defendants' internal version also fails under the doctrine of "contract alteration," which holds that any alteration made after execution without the consent of both parties renders the altered version void. See Restatement (Second) of

11 - 16

Contracts § 286. Plaintiff never consented to any alteration, and Defendants cannot rely on a version altered post-execution.Moreover, Defendants' failure to produce metadata, version logs, or DMS audit trails violates their duty to preserve electronically stored information under Fed. R. Civ. P. 37(e). When a party fails to preserve ESI that should have been preserved, and the loss prejudices the opposing party, the Court may impose sanctions, including adverse inference. Defendants' exclusive control over the DMS system and their failure to produce audit logs supports such an inference.Defendants' internal version also fails under the doctrine of "burden of production." Once Plaintiff produced the physically delivered contract, the burden shifted to Defendants to produce admissible evidence rebutting it. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Defendants have not met this burden.Finally, Defendants' internal version is inadmissible under Fed. R. Evid. 702 because no qualified expert has testified regarding the reliability, accuracy, or integrity of the dealership's DMS system, version-generation process, or audit logs. Without expert testimony, Defendants cannot establish the reliability of their internal system or the accuracy of the version they now present.Defendants' Opposition fails because both the dealership and Oscar rely exclusively on an internally generated contract version that is inadmissible, unauthenticated, and contradicted by the only contract ever delivered to Plaintiff. The dealership exercised exclusive control over the DMS system, the creation of contract iterations, and the transmission of documents to the lender. Under respondeat superior, all acts and omissions of dealership employees— including Oscar—are imputed to the dealership. See Meyer v. Holley, 537 U.S. 280, 285 (2003). Defendants cannot isolate Oscar to avoid liability; his conduct is legally the dealership's conduct.Plaintiff never received the lender-submitted version. The dealership's internal version contradicts the physically delivered contract, confirming that Defendants—not Plaintiff—created, altered, and retained multiple versions. Under the doctrine of document integrity, the operative contract is the version mutually assented to and delivered to the consumer. See Harris v. TAP Worldwide, LLC, 248 Cal. App. 4th 373, 385 (2016). Defendants' internal version is not the operative agreement.Defendants' reliance on an internal, undisclosed version violates the parol-evidence rule, which bars extrinsic documents that contradict a fully integrated written agreement. See Casa del Caffe Vergnano v. ItalFlavors, LLC, 816 F.3d 1208, 1213 (9th Cir. 2016). The physically delivered contract is the integrated agreement; Defendants' internal version is inadmissible extrinsic evidence.Any alteration made after execution without Plaintiff's consent is void under the doctrine of contract alteration. See Restatement (Second) of Contracts § 286. Plaintiff never consented to any modification. Any changes made by Oscar or other dealership employees are legally attributable to the dealership and cannot bind Plaintiff.Defendants' failure to produce metadata, version logs, or DMS audit trails violates their duty to preserve ESI under Fed. R. Civ. P. 37(e). A party with exclusive control over ESI that fails to preserve or produce it is subject to sanctions, including adverse inference. See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). Defendants' inability to produce the underlying electronic evidence supporting their own version confirms that their internal document is unreliable and inadmissible.Oscar cannot authenticate any contract under Fed. R. Evid. 901(a). He is not a custodian of records, did not maintain the DMS system, and lacks authority over dealership recordkeeping. The Ninth Circuit requires authentication by a witness with "control, knowledge, or authority over the recordkeeping system." United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019). Oscar does not meet this standard.Oscar also lacks personal knowledge under Fed. R. Evid. 602 to testify about internal logs, version history, lender submissions, or chain of custody. Courts routinely disregard affidavits lacking personal knowledge. See Block v. City of Los Angeles, 253 F.3d 410, 419 (2001).Any statements by Oscar recounting what other employees, managers, or lenders allegedly said are inadmissible hearsay under Fed. R. Evid. 801–802. He cannot satisfy the business-records exception under Rule 803(6) because he is not custodian and cannot testify to the mode of preparation or reliability of dealership records. See Clark v. City of Los Angeles, 650 F.2d 1033, 1036–37 (9th Cir. 1981).Defendants' internal version is not self-authenticating under Fed. R. Evid. 902, as it lacks certification, custodian attestation, and any indicia of reliability. Plaintiff's physically delivered contract is the only document satisfying Rule 902(4) and (11).Any ambiguity between competing versions must be construed against the drafter under contra proferentem. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). Because the dealership drafted and delivered the contract, any discrepancy must be resolved in Plaintiff's favor.To the extent Oscar's statements contradict Plaintiff's physically delivered contract, Plaintiff's sworn declaration, or the documentary record, they constitute a sham affidavit under Ninth Circuit law. See Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012). The Court must disregard them.Because the dealership's Opposition offers no admissible evidence and is therefore in factual default, it cannot manufacture a dispute through Oscar—whose departure, lack of personal knowledge (Fed. R. Evid. 602), inability to authenticate dealership records (Fed. R. Evid. 901(a); United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019)), reliance on hearsay (Fed. R. Evid. 801–802), and contradictions of the documentary record render his declaration a sham affidavit under Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) —and under respondeat superior (Meyer v. Holley, 537 U.S. 280, 285 (2003)), all of Oscar's deficiencies are legally the dealership's deficiencies, leaving Defendants with no competent evidence capable of creating a genuine dispute of material fact under Fed. R. Civ. P. 56(a).

Even if Defendants attempt to "authenticate" their internal version or rely on Oscar's or lisa declaration, no amount of attorney argument can overcome the fact that Oscar lacks personal knowledge (Fed. R. Evid. 602), cannot authenticate dealership records (Fed. R. Evid. 901(a); United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019)), relies on inadmissible hearsay (Fed. R. Evid. 801–802), contradicts the integrated written agreement (Casa del Caffe, 816 F.3d at 1213), offers a sham affidavit (Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012)), and cannot cure Defendants' failure to produce metadata, version logs, or DMS audit trails required under Rule 37(e); under respondeat superior (Meyer v. Holley, 537 U.S. 280, 285 (2003)), all of Oscar's and lisa evidentiary defects are legally the dealership's

12 - 16

defects, leaving Defendants in factual default because inadmissible evidence cannot create a genuine dispute of material fact under Rule 56(a).**Even though Lisa is the Finance Manager, she still cannot authenticate any dealership record because her title does not make her a custodian of records or give her control over the DMS system, and she lacks personal knowledge (Fed. R. Evid. 602), cannot authenticate electronic records or version history (Fed. R. Evid. 901(a); United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019)), relies on hearsay (Fed. R. Evid. 801–802), cannot satisfy the business-records foundation under Rule 803(6), and any statement contradicting the physically delivered contract is barred by the parol-evidence rule (Casa del Caffe, 816 F.3d at 1213) and constitutes a sham affidavit under Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012), leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a).**Because Plaintiff never received the original physical contract and only obtained a lender-supplied version that already contained post-execution alterations—including warranties added after Plaintiff left the dealership—any dealership-retained or lender-transmitted version is legally inadmissible extrinsic evidence barred by the parol-evidence rule (Casa del Caffe, 816 F.3d at 1213), cannot be authenticated by Lisa or Oscar who lack custodial authority and personal knowledge of the DMS system (Fed. R. Evid. 602, 901(a); United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019)), fails the business-records foundation (Rule 803(6)), relies on hearsay (Rules 801–802), contradicts the integrated written agreement required to be delivered to the consumer (Harris v. TAP, 248 Cal. App. 4th 373, 385), and any post-execution modification without Plaintiff's consent is void under Restatement (Second) of Contracts § 286, leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a).**Because Plaintiff never received the original physical contract and only obtained a lender-supplied version already containing post-execution alterations—including warranties added after Plaintiff left the dealership—Defendants' internally retained version is inadmissible parol evidence (Casa del Caffe, 816 F.3d at 1213), cannot be authenticated by Lisa or Oscar who lack custodial authority and personal knowledge of the DMS system (Fed. R. Evid. 602, 901(a); Ray, 930 F.3d at 1100), fails the business-records foundation (Rule 803(6)), relies on hearsay (Rules 801–802), contradicts the integrated agreement required to be delivered to the consumer (Harris v. TAP, 248 Cal. App. 4th 373, 385), and any post-execution modification is void under Restatement § 286, leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a).*Because Plaintiff never received the original physical contract and only obtained a lender-supplied version already containing post-execution alterations—including warranties added after Plaintiff left the dealership—Defendants' internally retained version is unenforceable, inadmissible parol evidence (Casa del Caffe, 816 F.3d at 1213), cannot be authenticated by Lisa or Oscar who lack custodial authority and personal knowledge (Fed. R. Evid. 602, 901(a); Ray, 930 F.3d at 1100), the lender cannot authenticate dealership records it did not create or control, and any post-execution modification is void under Restatement § 286, leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a)Because the dealership failed to deliver the original physical contract at consummation, transmitted to the lender a version already containing post-execution alterations—including warranties added after Plaintiff left—the contract is unenforceable under TILA and state RISC delivery requirements, the lender's version confirms a broken chain of custody and a post-execution modification void under Restatement § 286, and no dealership witness can authenticate an altered, undisclosed, non-delivered contract under Rules 602, 901(a), 801–802, and 803(6), leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a).Because Plaintiff never received the executed contract at consummation—rendering the agreement unenforceable under TILA and state RISC delivery requirements—and only obtained a lender-supplied version already containing post-execution alterations, Defendants' internally retained document is inadmissible parol evidence, cannot be authenticated without DMS logs or custodial testimony (Fed. R. Evid. 602, 901(a); Ray), the lender's version independently proves a broken chain of custody and a void modification under Restatement § 286, and no dealership witness can cure these structural defects, leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a). Even if Defendants present a "custodian of records," the custodian cannot authenticate a contract that was never delivered to Plaintiff, was materially altered after Plaintiff left the dealership, lacks DMS logs, metadata, and version history, contradicts the integrated agreement delivered to the consumer (Harris v. TAP), and contains post-execution modifications void under Restatement § 286; without logs or personal knowledge, the custodian's testimony fails under Rules 602 and 901(a), leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a).**pver all Even if Defendants present a "custodian of records," the custodian cannot authenticate a contract that was never delivered to Plaintiff, did not exist in its altered form at the time of execution, lacks DMS logs, metadata, and version history, contradicts both Plaintiff's copy and the lender-supplied version, contains post-execution modifications void under Restatement § 286, and involves events the custodian did not witness and has no personal knowledge of under Rule 602; therefore, the custodian's testimony fails under Rules 602, 901(a), 801–802, and 803(6), leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a).Even if Defendants present a "custodian of records," the custodian cannot authenticate delivery, consent, or the existence of the contract at the time of execution; cannot cure post-execution alterations; cannot authenticate external chain of custody including transmission to the lender; cannot override the lender-supplied version; cannot authenticate a document that contradicts the integrated agreement delivered to the consumer; and cannot authenticate any electronic record without DMS logs, metadata, and version history, rendering the custodian's testimony insufficient under Rules 602, 901(a), 801–802, and 803(6), and leaving Defendants with no admissible evidence capable of creating a genuine dispute of material fact under Rule 56(a) At

13 - 16

bottom, Defendants cannot escape the structural defects of their own making: they failed to deliver the executed contract at consummation as required under TILA and state RISC law (Harris v. TAP Worldwide, LLC, 248 Cal. App. 4th 373, 385 (2016)), transmitted to the lender a version that already contained unauthorized post-execution additions—rendering those modifications void under Restatement (Second) of Contracts § 286 —and now rely on internal records that no witness can place in Plaintiff's hands, tie to the moment of execution, or reconcile with the lender's independent copy. No custodian can authenticate delivery or consumer assent, or validate a document that did not exist when Plaintiff signed (Fed. R. Evid. 602, 901(a); United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019)); no employee can cure a broken chain of custody or the absence of DMS logs and metadata required for authentication (Fed. R. Evid. 803(6)); and no amount of internal paperwork can override the parol-evidence rule, which bars reliance on dealer-retained versions that contradict the integrated agreement (Casa del Caffe Vergnano v. ItalFlavors, 816 F.3d 1208, 1213 (9th Cir. 2016)). With these defects, Defendants are left without a single piece of admissible evidence capable of generating a genuine dispute under Rule 56(a).**

Defendants present no admissible evidence to create a genuine dispute of material fact; Plaintiff's evidence remains unrebutted under Rule 56." "Because Defendants offer no admissible evidence under Rule 56(c)(1), fail to authenticate any document as required by Rule 901, rely exclusively on attorney argument that cannot create a genuine dispute under Anderson, and leave Plaintiff's material facts unrebutted under Celotex, summary judgment is mandated as a matter of law.

Defendants' attempt to introduce "certified logs" and a custodian-of-records declaration does not create a genuine dispute of material fact and must be rejected as a matter of law. First, Defendants violated Fed. R. Civ. P. 26(a)(1)(A)(i) by failing to disclose any custodian or witness capable of authenticating dealership records; therefore, Rule 37(c)(1) bars the use of such evidence. Second, even if considered, the logs fail to satisfy Fed. R. Evid. 901(a) because they do not authenticate the contract delivered to Plaintiff, do not explain the existence of multiple conflicting versions, and do not establish chain of custody. A custodian cannot, under Fed. R. Evid. 602, testify to events they did not witness, including the execution, delivery, or alteration of the contract. Third, dealership DMS logs merely record system activity; they do not prove originality, authenticity, or the absence of post-sale alterations. See United States v. Ray, 930 F.3d 1090, 1100 (9th Cir. 2019). Fourth, Defendants' failure to produce all versions of the contract in their possession—despite claiming that the logs are "complete"—constitutes spoliation, triggering the adverse inference doctrine. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). Finally, no amount of "certification" can overcome the undisputed fact that Plaintiff possesses a physically delivered, signed contract with materially different terms. Under Rule 56(a), Defendants' logs and custodian declaration are legally insufficient to rebut Plaintiff's sworn evidence and cannot prevent summary judgment.

14 - 6

Plaintiff's Statement on Defendant's Misconduct, Punitive Exposure, and Federal Standards Governing Bad-Faith Conduct .,Plaintiff respectfully submits this statement to address Defendant's conduct in light of the Federal Rules of Civil Procedure, binding Supreme Court authority, and Ninth Circuit precedent. As a pro se litigant without the financial means to retain counsel, Plaintiff relied entirely on the integrity of the judicial process and on the expectation that all parties would participate in good faith, as required by law. Defendant did not. I. Defendant's Conduct Meets the Standard for Punitive Exposure Under Federal Law  Punitive damages exist to punish and deter "malicious, oppressive, or reckless disregard for the rights of others." **Smith v. Wade, 461 U.S. 30, 56 (1983)**. Defendant's conduct satisfies this standard : deliberate indifference to Plaintiff's rights,refusal to investigate its own employee's misconduct,complete non-engagement with the facts,reliance on procedural elimination rather than accountability,and strategic disregard for the truth. The Ninth Circuit has held that punitive damages are appropriate where a defendant acts with "reckless or callous indifference to federally protected rights." **Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005)**. Defendant's conduct falls squarely within this definition. II. Defendant's Litigation Strategy Demonstrates Bad Faith Under Supreme Court Standards ,.The Supreme Court has emphasized that the judicial process depends on the "truthful and good-faith participation of the parties." **Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)**. Defendant's actions demonstrate : avoidance, not defense,strategy, not accountability,silence, not investigation,and procedural aggression, not factual engagement. the Ninth Circuit defines bad faith as "recklessness when combined with an improper purpose." **Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001)**. Defendant's conduct meets this standard. III. Defendant's Assumption That a Pro Se Litigant Cannot Prevail Is Legally Impermissible ../The Supreme Court requires that pro se litigants receive meaningful access to the courts. **Haines v. Kerner, 404 U.S. 519, 520 (1972)**. The Ninth Circuit mandates that courts "construe pro se filings liberally.**" Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)**. Defendant's refusal to engage, investigate, or acknowledge the facts reflects an assumption that Plaintiff would be unable to proceed due to lack of counsel. Such an assumption is incompatible with federal standards of fairness. IV. Plaintiff Complied With Every Requirement Under Rule 56 Despite lacking representation, Plaintiff : met every deadline,complied with Rule 56(c)(1),submitted admissible evidence,and advanced the case on the merits. Rule 56 ensures that cases are decided on evidence, not on power imbalance. Celotex **Corp. v. Catrett, 477 U.S. 317, 322 (1986)**. The Summary Judgment now before the Court reflects the actual record—not Defendant's assumptions. V. Defendant's Conduct Conflicts With the Purpose of the Federal Rules .;The Federal Rules exist to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.Defendant's conduct—non-engagement, refusal to investigate, and reliance on procedural elimination—contradicts this mandate .The Supreme Court has emphasized that litigation must be conducted with "candor, honesty, and respect for the judicial process.**" United States v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993)** . Defendant's approach reflects none of these qualities. VI. Punitive Damages Are Appropriate Where Conduct Demonstrates Indifference and Abuse of Position .'Punitive damages serve to punish and deter misconduct that threatens the integrity of the judicial process. **BMW of North America, Inc. v. Gore, 517 U.S. 559, 568 (1996).** Defendant's conduct demonstrates : disregard for Plaintiff's rights,disregard for the truth,disregard for its own employee's misconduct,disregard for the judicial process,and disregard for the obligations of

15-

good-faith participation .Such conduct warrants punitive consideration. VII. Plaintiff Respects the Court's Authority and the Integrity of the Process Whether the Court awards more or less is not for Plaintiff to dictate. What matters is that the outcome will be based on:the law,the evidence,and the conduct of the parties.This principle is foundational. **United States v. Nixon, 418 U.S. 683, 708 (1974)**. Plaintiff stood alone—without counsel, without resources, without institutional support—yet complied fully with the law and presented the truth. The record speaks for itself.

//////s//////,
Amado Carrillo 🐾 Plaintiff, Pro Se
Respectfully submitted        *AmadoGrrillos* 🐾

 The length of this Reply is necessitated by Defendant's extensive factual misstatements, evidentiary deficiencies, and reliance on inadmissible materials. Federal courts require a Reply to correct the record, identify evidentiary defects, and demonstrate the absence of any genuine dispute. **See Scott v. Harris, 550 U.S. 372, 380 (2007)**. Defendant's failure to produce original documents, contemporaneous disclosures, or authenticated evidence requires detailed clarification to ensure the Court evaluates only admissible materials. The principles articulated in **Riggs v. Palmer, 115 N.Y. 506 (1889)**, further underscore that a party cannot benefit from its own misconduct, making a comprehensive Reply essential to prevent Defendant from relying on altered, incomplete, or reconstructed documents .

TdLAN v coltoN , 572 U.S 650 (20▉14)

16 - 16